IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| JOSE AGUERO | § | |
| | § | |
| V. | § | C.A. No. _____ |
| | § | |
| UNITEDHEALTHCARE | § | |
| INSURANCE COMPANY | § | |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

JOSE AGUERO sues Defendant for violating the Employment Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.* ("ERISA"). Despite repeated requests for his claim file so that he can appeal the wrongful denial of his health insurance claim, Defendant continues to ignore Mr. Aguero. He cannot appeal the decision without these documents. This Complaint challenges Defendant's 1) failure to disclose all relevant documents used in its decision to deny Mr. Aguero's benefits as required by ERISA; 2) failure to provide Mr. Aguero with a full and fair review of his claim; and 3) failure to provide a reasonable claims procedure that would yield a decision on his claim. Mr. Aguero seeks the documents required to permit him to perfect his appeal, to clarify and enforce his rights under the Plan and ERISA, and to recover costs and attorneys' fees as provided by ERISA.

## I.
## PARTIES

1. Jose Aguero is a resident citizen of Laredo, TX.

2. Defendant, UnitedHealthcare Insurance Company ("UnitedHealthcare"), is a domestic or foreign company licensed to do business and doing business in the state of Texas. It can be served with process by serving its registered agent,

1

Corporation Service Company, 211 East 7th Street Suite 620, Austin, TX 78701-3218, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

3. This action against Defendant arises under ERISA, 29 U.S.C. §1001 *et seq*. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

4. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendant maintains business activity in this district.

5. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

6. Plaintiff was at all relevant times a covered beneficiary under an employee welfare benefit plan created and administered by the Azteca Star LLC Plan. As a covered participant, Plaintiff was entitled to health care benefits under the Plan.

7. Azteca Star LLC was the employer and plan sponsor of the Plan.

8. UnitedHealthcare was the insurer and/or claim administrator of the Plan.

9. UnitedHealthcare purported to act as an ERISA claims fiduciary with respect to participants of the Azteca Star LLC Plan, generally, and specifically, with respect to Mr. Aguero, within the meaning of ERISA.

Policy Terms

10. Azteca Star LLC issued a health insurance policy that was intended to provide benefits to assist its employees and beneficiaries with health care expenses.

11. The Policy provided both in-network and out-of-network benefits for medical treatment. These benefits applied to cancer treatment.

12. The Policy established an allowable amount it would pay for eligible expenses incurred. The Policy permitted UnitedHealthcare to establish allowable amounts for medically necessary expenses payable to both in-network and out-of-network medical providers.

13. The Policy provided coverage for cancer treatment on an inpatient and outpatient service basis if it was medically necessary. This included proton beam therapy treatment.

14. UnitedHealthcare did not have discretionary authority to determine a claimant's eligibility for health insurance benefits or to interpret the terms and provisions of the Plan.

Plaintiff's Cancer Diagnosis

15. Mr. Aguero was diagnosed with cholangiocarcinoma[1], a type of stomach cancer.

16. He sought treatment at MD Anderson. Dr. Ethan Ludmir, a radiation oncologist, recommended that Mr. Aguero undergo proton beam therapy.

Proton Beam Therapy

---

[1] https://www.mdanderson.org/cancer-types/stomach-cancer.html?invsrc=brandleadership&cmpid=GI_ORG_bileductcancertreatment_G_SE_KWID_43700076095568717&customer_id=552-383-9991&gclid=CjwKCAiAxreqBhAxEiwAfGfndFnHV3gSGEqIeyI71YaR8q34deZbXaSbQmb6ybSCAugfb5hlDMyo5hoCH2YQAvD_BwE&gclsrc=aw.ds

17. Proton beam therapy ("PBT") has been recognized for decades by the medical community as an established, medically appropriate treatment for cancer. It is widely accepted by physicians, government agencies, insurers and other payers, including Medicare and Medicaid which, by statute, do not cover "investigational or experimental" services.

18. PBT uses protons to deliver a curative radiation dose to a tumor, while reducing dose exposure to healthy tissues and organs. It results in fewer complications and side effects than traditional IMRT. With PBT, protons deposit their energy over a very small area called the "Bragg peak." The Bragg peak can be used to target high doses of proton beams to a tumor, while doing less damage to normal tissues in front of and behind the tumor. Proton beams enable patients to tolerate higher doses of radiotherapy compared with the photon beams used for traditional IMRT. The proton beam used in PBT can be adjusted and formed to match the size and shape of the cancerous tissue to be destroyed, while not killing healthy tissue beyond a pre-determined scope and depth. The cancer cell then begins to break itself down through a process known as apoptosis, or programmed cell death.

19. The invention of PBT is credited to physicist Robert Wilson, who first described it theoretically in 1946. By the 1950's, some health care facilities were using PBT to treat certain types of cancers. The Food and Drug Administration ("FDA") approved PBT in 1988 for the treatment of cancer. The National Association for Proton Therapy, Alliance for Proton Therapy Access and other nationally recognized medical organizations, and numerous meticulous peer-reviewed studies have validated the safety and effectiveness of PBT.

20. Mr. Aguero's world-renowned treatment provider, MD Anderson, first used PBT treatment in 2008 and has since treated over 2,000 patients with PBT.

21. In addition, many other respected cancer facilities and providers recommend and use PBT on a regular basis, including without limitation, the Texas Center for Proton Therapy, Mayo Clinic, Baptist Hospital's Miami Cancer Institute, Loma Linda University, University of Florida, University of Maryland, Northwestern University, Emory University, Case Western Reserve University, Washington University in St. Louis, University of Washington, and the New York Proton Center. The first hospital-based proton-beam center in the United States was at the Loma Linda Medical Center, which began operation in 1990. In 2018, the University of Miami announced its intention to build a PBT center at its Sylvester Comprehensive Cancer Center.

22. There is overwhelming evidence that PBT is safe, effective, and a generally accepted standard of medical practice for the treatment of cancer within the medical community; particularly cancers like Mr. Aguero's.

Denial of Medically Necessary Treatment

23. Dr. Ludmir submitted an urgent prior authorization request for approval of PBT on July 28, 2023.

24. UnitedHealthcare denied coverage for PBT on July 31, 2023, deeming it "not medically necessary".

25. On August 4, 2023, a peer to peer was performed with UnitedHealthcare Medical Director Dr. Valakh. During the call, Dr. Valakh requested the comparison plan. Dr. Ludmir sent the comparison plan to Dr. Flores, who forwarded it to Dr. Valakh.

26. Dr. Valakh did not submit any notes on the claim in relation to the peer-to-peer discussion. He recommended that the claim be denied.

27. MD Anderson submitted a Level One appeal on August 7, 2023.

28. UnitedHealthcare denied the appeal by phone three days later.

29. MD Anderson submitted a Level Two appeal on August 14, 2023.

30. UnitedHealthcare denied the appeal on August 29, 2023.

### UnitedHealthcare Ignore Requests for Information and Documents

31. On October 9, 2023, UnitedHealthcare advised Mr. Aguero that:

> You have the right to receive, on request and free of charge, reasonable access to and copies of all documents, records and other information relevant to your appeal.

32. Mr. Aguero hired the undersigned counsel to assist him in obtaining more information and appealing UnitedHealthcare's wrongful denial of the claim.

33. On October 4, 2023, undersigned counsel wrote to Defendants, advising that they represented Mr. Aguero in this claim and to provide the following documents:

   i. A complete copy of all documents, records, and other information relevant to Mr. Aguero's claim for benefits from the dates of his treatment to the present. This information should include all documents, records, and other information that was submitted, considered, or generated while making the benefits determination, regardless of whether the information was relied upon in making your determination. This should also include a copy of the relevant policy or certificate of insurance.

   ii. The full names and identities of all medically trained consultants, experts, or other professionals that had a role in evaluating Mr. Aguero's claim.

   iii. A complete copy of the Policy that was in effect on Mr. Aguero's dates of treatment and the time of claims submission.

   *Exhibit 1.*

34. Two different authorizations, including a HIPAA authorization, were also sent.

35. The letter was sent to the address UnitedHealthcare's Appeal Department, as well

as the addresses listed for its Grievance Administrator and another address listed in its denial letters.

36. UnitedHealthcare did not respond.

37. On October 24, 2023, undersigned counsel made a second request for the same documents to UnitedHealthcare. *Exhibit 2*.

38. UnitedHealthcare did not respond.

39. On October 31, 2023, undersigned counsel made a third request for the same documents to UnitedHealthcare. *Exhibit 3*.

40. UnitedHealthcare did not respond.

41. On November 4, 2023, undersigned counsel made a fourth request for the same documents to UnitedHealthcare. *Exhibit 4*.

42. UnitedHealthcare did not respond.

43. UnitedHealthcare did not produce any documents.

44. UnitedHealthcare's thirty (30) days to respond to Plaintiff's request for a copy of his Claim File expired on November 3, 2023.

45. UnitedHealthcare will not respond unless it is forced to defend itself in this lawsuit.

46. UnitedHealthcare will not produce Mr. Aguero's claim file unless it is forced to defend itself in this lawsuit.

47. Due to UnitedHealthcare's denial of the claim, Plaintiff is forced to pay out of pocket for the full cost of his PBT treatment. The treatment is covered under the Policy.

48. Plaintiff is unable to effectively appeal UnitedHealthcare's denial because UnitedHealthcare has ignored his repeated requests for documents.

ERISA Disclosure Requirements

49. Administrators have an obligation to provide information to Plan participants and beneficiaries. This obligation includes a duty to respond to written requests for information about employee benefits and the documents relevant to a claim for benefits. Plan participants and beneficiaries have a cause of action if administrators fail to provide the requested information.

50. Specifically, 29 U.S.C. §1132(c) provides for penalties for an administrator's refusal to supply required information. 29 U.S.C. §1132(c) indicates:

    (1) ***Any*** administrator….[who fails to provide certain information]

    > (B) who fails or refuses to comply with a request for any information which such administrator is ***required by this subchapter to furnish*** to ***a participant or beneficiary*** (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

51. The penalty is to be paid by any administrator who fails or refuses to comply with a request for information "which such administrator is required by this subchapter to furnish to a participant or beneficiary."

52. This penalty applies to the failure to provide the documents relevant to the Plan: "(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or

operated."

53. In addition to the summary plan descriptions and other documents under which the plan is operated, 29 U.S.C. §1029 provides that the Secretary of Labor may also prescribe what other documents should be furnished:

> (c) Format and content of summary plan description, annual report, etc., required to be furnished to plan participants and beneficiaries. The Secretary may prescribe the format and content of the summary plan description, the summary of the annual report described in section 1024(b)(3) of this title and ***any other report, statements or documents*** (other than the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated), ***which are required to be furnished or made available to plan participants and beneficiaries receiving benefits under the plan.***

[emphasis added]

54. Pursuant to §109(c) and 502(c), the Secretary has authority to establish the format and content of what documents are required to be produced "by this subchapter." Therefore, "Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to . . .may in the court's discretion be personally liable" for a §502(c) penalty.

55. The Secretary also has general authority under "this subchapter" to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this title. 29 U.S.C. §1135.

56. The Secretary of Labor's ERISA claim procedures regulations set out in 29 C.F.R. §2560.503-1 (h)(2)(iii) describe the documents an administrator must disclose upon written request.

57. To provide a full and fair review, a claimant shall be provided, upon request and

free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

58. Whether a document, record, or other information is relevant to a claim for benefits is determined by reference to 29 C.F.R. §2560.503-1 (m)(8).

59. The Secretary explained at 29 C.F.R. §2560.503-1 (m)(8) that the following documents are relevant to the claim, and must be produced under ERISA:

> (8) A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
>
> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>
> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

60. UnitedHealthcare had an obligation to provide all the documents relevant to a claim that are required to be provided by the Department of Labor's ERISA claims regulations.

61. As claim administrators and insurer, UnitedHealthcare had all the documents requested by Mr. Aguero. Moreover, UnitedHealthcare was the only entity with any obligation to provide the documents who also had the documents he requested.

62. To date, UnitedHealthcare has failed to produce Mr. Aguero's claim file or any documents related to his claim.

63. In the Fifth Circuit, a plaintiff may submit additional evidence in support of his claim even after appeals have been exhausted. UnitedHealthcare has an obligation to review additional information. ("The administrative record consists of relevant information made available to the administrator prior to the . . . filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it".) *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). *Vega* has been repeatedly upheld by the 5th Circuit, most recently in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

64. UnitedHealthcare's failure to respond to Mr. Aguero's requests has prohibited him from determining his Plan rights, exhausting his ERISA administrative remedies, and providing additional evidence supporting his claim that is permitted under controlling Fifth Circuit authority.

**IV.**
**CLAIMS & CAUSES OF ACTION**
**Breach of Fiduciary Duty**

65. The Azteca Star LLC Plan is governed by ERISA. 29 U.S.C. §1001, *et. seq*. Azteca Star LLC Plan is the plan sponsor and Plan Administrator. UnitedHealthcare is the insurer, Plan Administrator, and/or Claims Administrator for the Plan.

66. As Plan fiduciary, Defendant is obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. It is also obligated as a fiduciary to conduct its investigation of a claim in a fair, objective, and evenhanded manner.

11

67. Instead, UnitedHealthcare failed to provide Mr. Aguero with the information required by ERISA to pursue its unsupported adverse benefit denial.

68. As a direct, proximate, and foreseeable result of UnitedHealthcare's misconduct, Mr. Aguero has been injured and is entitled to equitable and other relief.

69. Mr. Aguero is entitled under 29 U.S.C. §1132 to an order requiring UnitedHealthcare to provide him with the Claim File and the requested documents.

70. Mr. Aguero's pursuit of this matter benefits all members of the Plan, particularly those individuals unaware of ERISA's disclosure requirements, the timeframes for those disclosures, and how to effectively appeal an adverse benefit decision.

71. In the Fifth Circuit, a plaintiff may submit additional evidence in support of her claim even after appeals have been exhausted. Defendants have an obligation to review additional information. ("The administrative record consists of relevant information made available to the administrator prior to the . . . filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it".) *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). *Vega* has been repeatedly upheld by the 5th Circuit, most recently in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

## V.
## CLAIM FOR ATTORNEYS FEES & COSTS

72. Plaintiff seeks an award of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this matter. He is entitled to recover those fees, together with his costs of court, pursuant to 29 U.S.C. §1132(g).

## VI.
## PRAYER

Jose Aguero, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor and against UnitedHealthcare, and issue judgment against UnitedHealthcare as follows:

A. That UnitedHealthcare be ordered to produce all requested documents within 7 days of any final judgment;

B. That UnitedHealthcare pay all reasonable attorney's fees incurred and to be incurred by Plaintiff in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

C. All such other relief, whether at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

By: /s/ Amar Raval
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF